Good morning, Your Honors. This case is an immigration case. There are two issues presented in this case. The first issue is whether the government has rebutted the presumption of well-founded future persecution for the petitioner. Petitioner, he's another Falun Gong practitioner, but he was persecuted in China, and the BIA found he suffered past persecution. And then there necessarily arises a presumption of a well-founded future persecution. And in this case, the judge, the IJA, concluded that the government rebutted the presumption by showing a preponderance of evidence in China's personal circumstance. And the preponderance evidence in this case that the IJA cited was a passport issued by the Chinese consulate to the petitioner. And the judge said because the petitioner was issued a passport, therefore, the judge's theory was by issuing a passport, the Chinese government showed the Chinese government no longer interested in this petitioner if he goes back to China. And also, as I said, by issuing a passport, the Chinese government showed their acceptance of his past behavior, meaning some action in China he was arrested for. And also showed the government's willingness to accept him to go and return to China as a Chinese citizen living in China. So I believe this theory is flawed by two reasons. Number one, this, first of all, is largely speculation. So the judge did not cite any evidence to say issuing a passport is actually showing the government is going to accept him, allow him to go back to China without any incidents, without any problem. But he didn't cite any evidence or law to say that. I just don't know how the judge – You said in your brief, you said in your brief, though it may be relevant, the mere ability to obtain a passport does not diminish the likelihood of persecution. Though it may be relevant, tell me how you think it would be relevant or could be relevant. The issuance of the passport you suggest, you say, may be relevant. How so? Yes, Your Honor. First of all, for the government, for the petitioner to obtain a passport in the U.S., it's for him it's necessary to use his ID. Because he has no other ID documents. No, I'm just asking, when you say it may be relevant, how do you think it's relevant? The issuance of the passport you say may be relevant. How would you say it may be relevant? On what issue is it relevant? The only relevant thing is the government recognizes him as a Chinese citizen. So they're recognizing him to allow him to return to China. Your argument in this brief is you think it's any question that he's a Chinese citizen? You say it may be relevant. That suggests, I think, that it's relevant to the issues in front of us. There's no question in front of us about whether or not he's a Chinese citizen. The only issue, Your Honor, because he was issued a passport, so the Chinese consulate recognizes he's a citizen. That's only relevant to show the government recognizes he's a Chinese citizen or allow him to travel to China, but that's the only possibility. No, wait. So when you say, though, it may be relevant, you mean it may be relevant to issues not in this case? Or is that you just miswrote it? No, because he was issued a passport. That's a fact that he was issued a passport. So the theory the judge has is if he was persecuted, why the Chinese government would issue him a passport? And this is a strong indication for the government to say, okay, this is security clearance. You have no problem. Do you think the government, the judge, is required to find the issuance of the passport means nothing on these issues? Is the BIA required to find that? I know you make an argument that they shouldn't find it, and maybe a lot of people think that, but are they required to find the issuance of the passport is not relevant at all? Yes, Your Honor. His answer is yes. Issuing a passport means nothing to the respondent. It has nothing to do with his future fear. It has nothing to do with whether— If the passport, I mean if the embassy had refused, had refused to issue a passport, would you think that was relevant? That's also relevant, yes, Your Honor. That is relevant? Yes. So in other words, giving him a passport is not relevant, cannot possibly be relevant, that's your argument? Cannot possibly be relevant. But denying him one is relevant. That's your argument? Yes, Your Honor, because on the report the judge also cited in the case says for the Chinese government, they refused to issue a passport to those high-level, high-profile Falun Gong practitioners, high-file dissidents. The government does not want those people to return to China. I know that, but couldn't the passport officer have made a mistake? Just made a clerical mistake. So why would that be relevant then? That could be, Your Honor. But we don't know. The issue is we don't know how the country— And since we don't know, I'm asking, is the government, since we don't know for sure, and the government goes, he was issued a passport, there's a committee, there's a country report that says some people who are problems can't get it issued, why can't the government, you may not want them to, but your argument is the government is absolutely prohibited from making an inference that that means he's not at risk anymore? Your Honor, it's not my point. My point in the country profile says clearly the Chinese government only refused to issue a passport to those high-level dissidents. But for this practitioner, he's a low-level. He's not in that category. They have some people on the blacklist, they will never issue a passport, will never allow them to return to China. But for those people, he's not a practitioner. He was just afforded as a practitioner. So therefore, he can't issue a passport. But that doesn't mean anything because in the facts, they said on the same month he was issued a passport, the local authority went to his parents' home to look for him. That just shows the local police are still looking for him. It has nothing to do with the passport. The passport was issued by a country in New York City. But the standard that we look at the decision is not if we think you make a good argument or not what we would do or not maybe what 90% of people would do, but the standard in the standard that any rational finder of fact would have to, would be compelled to accept your argument and find that the government's argument and presentation is wrong. You'd have to say there's no, anybody that looks at this, any reasonable person, would have to say government, you are wrong, you have to find the other way. Isn't that the standard we look at it under? Yes, Your Honor, but the point is. What about the burden of proof? I mean, is it? It's on the government. The burden of proof is on the government. Yes. So isn't the question whether any reasonable fact finder would have to find that the government met its burden of proof by a preponderance of the evidence that this inference was better than all the other inferences? Yes, Your Honor, yeah. So I just view it by issuing a passport. That is the fundamental, the preponderance of evidence shows the fundamental change. But my view is not. So issuing a passport I don't see in any sense constitutes a fundamental change in personal circumstance. So there may be many other reasons that can be, but issuing a passport simply shows the government recognizes he's a Chinese citizen. That's it. It does not constitute a fundamental change. It cannot be by itself a preponderance of evidence to show the Chinese circumstance, and therefore he has no more future fear. Here I just want to point out another thing is, so the law requires, once the passport is established, there's a presumption, automatic presumption of future persecution. Talk about the change of the country condition in China. But here the VA is older. Also, when they remanded the case back to the judge, they asked the judge to consider whether or not there's changes, some changes called fundamental changes in circumstance we call the changing country conditions. But the judge never did that, and the VA didn't do that either. So nobody addressed the change in the country condition. Because we all know based on the records, the evidence is there, the country never changed. The conditions are the same. The government still corrects the Falun Gong nationwide still until today's date. So by the record we have 2012, the country human rights practice in China. This shows the government is still practicing Falun Gong. So they only talk about the change in the personal circumstance, never address the change in the country condition. So even the personal circumstance change, and he primarily is a citizen, has children here, but that does not change the country condition. In China, when the prosecution relates to that question, it's a presumption of future fear relating to the country condition. But the VA never addressed that issue. Can I ask you a quick question? I agree with you that the IJ and the BIA are relying mostly on the passport, but the IJ also has a footnote in the opinion saying that the petitioner's parents told him that the last time the local authorities came looking for him was in September 2009. Yes, exactly. What's your response to that? Couldn't the BIA infer from that, the IJ or the BIA infer from that, that the government has pretty much given up? Yes. When he testified to that issue, the judge stopped, never asked any more questions. Are they still looking for you? Are the authorities still going to your home to look for you? Then no more such following questions. But that shows the government never gave up looking for him, until probably after they found out he left the country, they didn't go anymore. I thought I also saw, though, somewhere in the pleadings, that your client didn't talk to his parents anymore after September 2009 about whether the police were still looking for him. So he wouldn't have known one way or the other. In fact, in 2011, he testified to that fact. He did say he still kept talking to his parents. Right, he still kept talking to his parents. I understand that. But they didn't talk anymore about this police issue. Right, whether they still went to his home or not. But my guess is after the parent told the authority, this guy is no longer in China, he left the country, why they keep looking for that? There's a logical reasoning inference I can draw. But that just shows in China the situation never changed. So my point is because no change in the country condition, so therefore the prisoner is still facing prosecution if he does return. All right. Anybody? I have the second issue. The second is the relocation issue. Under this issue, the judge never questioned him about the relocation, and the government never questioned him either. At the hearing, they never say, can you go back to China to avoid moving to another part of China? So there is no line of question about the relocation issue. The judge did not raise that issue either. Only after the case, the conclusive testimony, when he made the decision, he said he talked about he could relocate to another country, because the judge saw he has a passport, he can go to another part. But the issue is not the passport. The issue is whether he can possibly move to another location, and the relocation is reasonable. But the judge never talked about the reasonableness of the relocation. Simply draw inference from the passport. And if the country conditions haven't changed, then it wouldn't be reasonable that he could relocate. Exactly. And the relocation, the judge never addressed it. You have to talk about the reasonableness. So even if he has a passport, it's possible to move, but the judge has to address the reasonableness to show that it's reasonable, and it's reasonable to expect him to do so. But the judge never talked about the requirement, the rules. You have to talk about if he does move, he has to consider the life, the social life, the family, relative, culture, job. Okay. Your red light is on, but you have some time in rebuttal. Okay. Thank you. Good morning, Your Honor. Sergio Sarkany for Respondent and Attorney General. I'd like to start off by addressing a representation made by a petitioner, counsel, and discussed by this court. This is not, the issue doesn't rest on changed country conditions in China. This is an individual analysis. DHS rebutted the presumption of a well-founded fear by showing a fundamental change in petitioner's personal circumstances, which is allowed by statute and the code. And that was simply because he was able to get a permit? I'm sorry, a passport. I would also take issue with the characterization by petitioner and perhaps by this court that the passport was the central basis for the agency's determination that DHS had rebutted the presumption. If you take a look at the board decision, which is the final order of removal on review, it starts with addressing the demonstrated absence of continuing police interest in petitioner. And then it addresses the passport. It's a totality of the circumstances analysis to address this individual petitioner's changed circumstances. And there's at least two facts that the board relied on, record facts and drew reasonable inferences from them. And I'd like to start with the absence of continuing police interest. If you'll recall, he is arrested and abused in April 2009. He leaves the country in July 2009. And the last time his parents had advised him that the police were looking for him back in China was September of 2009. That's the last time they talked about that. I don't think that necessarily means that the police weren't looking for him still. Well, ma'am, I would say it's a reasonable inference to conclude that the petitioner would have told the court, obviously, if they had discussed it and if the parents had told him. But I find it strange that this wouldn't be told to the petitioner in subsequent discussions with his own parents, especially as he's making an asylum claim. Well, we can argue about what you would find strange and what somebody else might find strange. But maybe what is strange is the intersection of the standard of review and inferences drawn. You understand? Yes, Your Honor. Because I think it's sure. This is what I was getting at. I'm not sure how this gets resolved. But I think the government's position is we don't have any record information they were looking at him in China after September 2009. And we think a reasonable inference from that is they were no longer looking for him. Yes, Your Honor. And then you also, let's move to the passport, I take that to be you say a reasonable inference that if they issue the passport, the reasonable inference is he's really not on their list anymore. They're not interested in him anymore. Right? At least to some extent, Your Honor. Yes. Well, I'm just saying that generally. Yes. So the question becomes, what do we do with inferences off facts and how does that match up with the standard of review? You understand my point? Certainly, Your Honor. And the burden of proof because I do find it a little bit complicated. Sure. As to the standard of review, as the court knows, it's highly deferential. It's a record review. And a reasonable adjudicator must be compelled to reverse the agency's decision based on specific record facts as articulated by petitioners. And then what do we look at, though, to decide what we're applying that to? Yes, Your Honor. Well, the agency is the expert agency tasked by the Attorney General to adjudicate these claims. They are the experts in the INA. And certainly on a case-by-case basis, they draw reasonable inferences. And I would suggest that. I'm sorry. I apologize for cutting you off because I'm so genuinely puzzled by this. So is it your position, say there's a fact, like an issuance of a passport, from which you could draw two reasonable inferences, contradictory. One would be they're not interested in him anymore. The other would be now they know exactly where he is. If he tries to get back into the country, they will either bar reentry or punish him when he gets there. Two, you could infer two different things from it. Or there's even a third one. There's no coordination at all between what's going on in China and this New York consulate office. Nobody, the right and left hands have no idea what they're doing. Lots of different inferences you could draw. All of them would be reasonable. If the government has the burden of proof of rebutting the presumption, is it sufficient for the government to point to one among many plausible inferences and say we pick that one without explaining why? Or does there need to be some reason why that's the inference, that's the more plausible of the inferences in order for the government to meet its burden of proof? Two things. Under the very generous standard of review, we believe that the agency, again, the expert agency tasked with adjudicating these claims may make, in its own judgment, a permissible inference based on the facts. And if it's not contrary to law. But does it have to infer that this is the more plausible of the inferences or is it enough? Do you see what I'm saying? Yes, Your Honor. If you guys didn't have the burden of proof, if this weren't about rebutting a presumption, if this were just, I don't know, is he subject to persecution or not, then I totally agree the agency can pick one inference and say we're the experts, we're going with that one. But where the government has to rebut a presumption, might it not be the case that you need more than to be able to say this is one among the plausible inferences and for no particular reason we like this one? Well, first of all, Your Honor, in response, it is a totality of the circumstances review. So, I mean, sorry, it's a totality of the circumstances decision by the agency to determine whether the presumption was rebutted. They could, they very well may have relied on the continuing absence of police interest. Again, he testified in May 2011 and didn't offer any evidence that the police had come looking for him past September 09. Now that's a record fact. And it's, again, it's a totality circumstance. So that record fact can infer or inform what inference the agency trusts. It sounds like you're, again, putting the burden on him. That there's a lack of evidence that the police are looking for him, so the police are looking for him, or not looking for him. Your Honor, initially it's the petitioner's burden. Then it becomes the department's to rebut by preponderance. But ultimately it remains the petitioner's burden to show that he or she is a refugee. But here the petitioner has the benefit of the presumption. Yes, Your Honor. We assume, we presume, unless the government can persuade otherwise, that in fact the petitioner is subject to persecution. And the IJ found him credible, right? Yes, correct. And a finding of past persecution. But I think that this Court may be going a step too far in not allowing the agency to I haven't done anything except to ask questions. Yes, of course, Your Honor. In the context of perhaps where this analysis may lead. Excuse me for that. To question whether the agency can actually just simply draw a reasonable inference from record fact and go with it, that is precisely what they do on a case-by-case basis. And we believe that the inference drawn here under the totality of the circumstances review is permissible. And not manifestly contrary to law. And quite reasonable. And it supports their ultimate conclusion that DHS has a Does the government agree that Falun Gong members are still persecuted in China? What the record shows, Your Honor, is that yes, they are. The IJ did, however, take administrative notice of more recent country conditions evidence. And did point to a trend in recent years to target high-level activists, lawyers. The affirmative evidence is that members of that organization are still persecuted in China. And the last evidence we have in the record is that the local police were still looking for a petitioner in China. Correct. So. Well, Your Honor, again, the analysis here isn't whether, first of all, if you're getting toward the relocation issue, Your Honor, would that be what you're addressing? You just have to answer the question as best you can. Please repeat it then. Go ahead. The question is the evidence seems to point against your argument. First of all, the IJ found him credible. Second of all, the government concedes that Falun Gong members are still persecuted in China. Third of all, the last evidence actually in the record is that he was being looked for, that the police were still looking for him in China. So how does the government rebut the presumption based on that evidence? It seems to me the government is rebutting the presumption by a lack of evidence. Well, the absence of continuing police interest is regularly recognized by the agency. I don't see how we have the absence of continuing police interest. Your Honor, well the court also notes that Petitioner was given at least two other opportunities to present additional evidence. Why does the Petitioner have to present additional evidence? What is? Your Honor, at the end of the day, the Petitioner, at the end of the day we have to determine whether a well-founded fear exists in the reality of the circumstances. On the record is Petitioner's statement that the last time he was aware the police had come looking for him was September 2009. His counsel and Petitioner were given two additional opportunities on both remands to present additional testimony or even conduct an individual hearing. They declined to do so. So by the time of the IJ's last decision, which is in 2017, and the Board's affirmance in 2018, it had been years, five to six years since Petitioner's last testimony, and more years than that since the police had come to look for him. Those are record facts from which the agency may draw inference that the police are no longer interested in this gentleman. Do you think that the burden shifting regime plays any difference here at all, plays any role? Because, again, just your description of they didn't put on new evidence, they didn't show up with evidence that the police are still looking for him, do you think it, and so does the, and you keep coming back to the idea that the ultimate question is reasonable fear of persecution. In your view, does the part where the burden shifts to the government make any difference in the way we should review this case? Your Honor, yes it does, but in practice I'll tell you. Okay. The agency simply stated that as of the date they issued their decision, right? September 09 was the last time that the police had come looking for the Petitioner, and they also stressed that this gentleman was a low-level practitioner. He unknowingly distributed pamphlets years ago. I feel like maybe you're answering my question, but I'm not quick enough to figure out the connection. I'm just asking you to explain to me what difference, in your view, did it make when the burden shifted to the government to show by a preponderance of the evidence that there had, in fact, been a change in circumstances. At what point, like, what difference does that make, in your view, to the way we should be looking at this case and how we should be reviewing it? Well, the judge is then tasked with examining what evidence DHS has submitted, which is typically in the context of country conditions. You're not answering the question. I certainly can't follow it either. I think she's just asking. You're telling us how you put together a case in a specific circumstance, but Judge Harris is asking you, and I think it's a very astute question, actually, what difference does the shift in burden of proof matter to how you go about and what difference you get in presenting your case? If it was just a case where, say, he had to establish that he was being persecuted, you would stand in front of us and go, here are facts one, two, and three, and a reasonable inference can be A, B, and C. It doesn't have to be, but we're allowed, because in this circumstance, we're allowed to decide whether or not he's met his burden for our determination. She's just asking if the burden has now shifted to you, if I understand the question correctly, if the burden has now shifted to you, are you in the same place and you're entitled to any reasonable inference, or is there something more than that? Does the fact that you have the burden of proof on this, does that change the analysis at all? You're at argument today. In this case? Yes, Your Honor, it does. The analysis is now whether substantial evidence supported the agency's finding that DHS had reported. And under that scenario, which we're here for today, are you still entitled to the benefit of any reasonable inference? In other words, he can give a great inference, but you can give a great inference, you win. So the inference that you're allowed, it doesn't change because you have the burden of proof. Your Honor, I can't say that the agency isn't allowed to draw reasonable inferences from the evidence DHS submits to satisfy its preponderance burden in rebutting the presumption under a totality of the circumstances analysis. The agency is still the expert adjudicator here, and still entitled to a wide deference, even in evaluating whether DHS has satisfied its preponderance standard. And so in our review, then the next question becomes, in our review of what the agency did, we don't care either who had the burden. We just look at it as, are there reasonable inferences which support, you may be right, which support that, and if it's a reasonable inference, the agency gets them. If it's permissible, reasonable inference, Your Honor, that is not manifestly contrary to law or refuted by specific concrete record facts, then the agency decision must stand on the highly deferential review that we have here. Does the preponderance of the evidence mean more likely than not? So I would have thought that the government would have to show that the inference it is drawing is more likely to be the right inference than the competing inference that the petitioner is showing. Yes, Your Honor. Is that the preponderance? Correct, of course. And again, I invite the Court's attention. Now, isn't the more likely inference from the fact that the last time the record indicates the police were looking for him was September 2009, isn't the more reasonable and likely inference that they know he's not there? They're not going to spend the next ten years looking for someone they know is not there. They're going to wait until he comes back and get him then, because they still persecute members of that organization in China. That seems more reasonable. Well, we simply don't know that, Your Honor. Right. But, Your Honors, the agency also did stress repeatedly that this was a man who had handed out Falun Gong pamphlets for a matter of hours on one occasion and did so unknowingly. And they also made a point to conclude that he would not be brought back into the target zone of the Chinese government upon his return, in their opinion, because he repeatedly stated he no longer intended to practice this religion. That, again, to me, reads the whole presumption right out of it, because the one thing we know for sure, given the IJ's credibility determination, is they already persecuted him once for doing exactly that. That's the point of the presumption. We're allowed it, even though it shouldn't have happened, because all along they've mostly targeted the high-level people, it happened. So that's the nature of the presumption. We presume it happened once, it's going to happen again. So I don't see why it's helpful to know it's weird it happened the first time. Well, yes, it is weird it happened the first time, but it happened. And that's why he gets the benefit of the presumption. He gets the benefit of the presumption, Your Honor. And the DHS's burden, by preponderance, was to demonstrate a fundamental change in his personal circumstances. They induced two pieces of evidence, two pieces of record evidence. One is the absence of any indication that since September of 2009, Felice had come looking for this gentleman. They also gave record evidence that he had successfully procured a passport from the Chinese consulate in New York in September of 2009 as well. Did the IJ ever address the ‑‑ in thinking about what inferences one could reasonably draw from the passport, it does seem that the fact that at the same time, roughly, that the passport was being issued, everybody agrees, the local authorities were actually looking for him in order to persecute him, that that suggests that maybe we should not infer from the passport that he's off the hook. I strongly suggest that. And the IJ never discusses that, right? Correct, Your Honor. And two things there. One is that we're not clear when in September of 2009 Felice had come looking, last come looking for a petition. It could have been the first of the month, could have been the last day of the month. He does issue a personal statement along with his application that states, that reads September 3rd, 2009, and indicates that his parents in China had told him since he came to the States that the police were looking for him. That possibly suggests it was very early on September of 2009. Possibly. Yes, Your Honor. The government has the burden of proof. Again, yes, Your Honor. But regardless, even if the court sees some friction between those two facts, at the very least it demonstrates that some aspect of the federal. What date was the passport issued? Well, his asylum application shows a passport that expires September 29th, 2019, inferring or demonstrating that it was September 29th, 2009 that he secured. So if it was very early in September that the police were looking for him, then the passport office would have. There's a plausible time differential there, especially because his personal statement dated September 3rd, 2009, indicates that since he had come to the States, he had talked to his parents and the parents said the police were looking for him. So that would depend. For that to be right, sorry, I have this one last question. For that to be right, we'd have to assume like not only coordination between the New York consulate and the local authorities in China, but like really up-to-the-minute coordination. And so I am puzzled by the second part of the I.J.'s opinion, and this is over in Relocation, which I'm not trying to get into, but where the I.J. specifically finds there's no evidence in the record that Chinese authorities communicate with one another and that the ability to receive a valid Chinese passport suggests that there is no national system in place that alerts local officials to what's going on at the New York consulate. So what do I do with that? Yes, Your Honor, and that was the point I was just going to approach. If the court sees friction between these two facts, then it can conclude, I think at the very least, that issuance of the passport indicates that some aspect of the federal entity of China does not have Mr. Dong as a target. And that's why I think in part the agency referred to the country conditions evidence that said that certain individuals who were deemed Falun Gong activists were exiled or not allowed back in to China. So the passport at least indicates some evidence that the federal entity of China no longer have this gentleman as a Falun Gong practitioner as a target or on any sort of list, especially since he presented his correct name. If you only, hypothetical, if the government, all they had was the issuance of the passport, would you still be taking this position? If it was the issuance of the passport, would that alone be enough for the government to win? The issuance of the passport. I would make that argument, Your Honor, given the other facts in the case. And say in the other facts. Well, I mean, given. I'm just saying. Yes, Your Honor. The issuance of the passport. An issuance of a passport. Yes, Your Honor. An issuance of a passport. Is that a reasonable inference that the, and it may or may not be, that the embassy in New York or the consulate or whatever it is, they know what's going on in their home country. Is that a reasonable inference or do we, the other inference is they don't have any damn idea what's going on in the country. I mean, is that a reasonable inference? It's truly hard to say, Your Honor. If I asked you to give me the answer. On a case-by-case basis, I would say that. On a case-by-case basis, this is also a country of over a billion people. Correct, Your Honor. But I'm just asking this question about the issuance of the passport generally. Would that be enough? Would that issuance alone carry an inference that the country is not really concerned about him Is that enough? Yes, it can be. Yes, it is. Yes. And again, at the very least, that indicates a disinterest by the federal entities and the agency also relied on a disinterest by the local entities. Well, at the very, no, no, no. At the very least, you would take it to be that. It could be a clerical error. But the point is you're just saying you'd be entitled to the belief that that represents an indication that the country doesn't care about him. Yes, Your Honor. You don't have to have proof of it. It's just what you're entitled to think of it. What the agency is entitled to infer reasonably, not manifestly contrary to our law or the record at hand, yes, that's what the agency does. So, again, that's a federal indication. They relied on a local indication. And those two record facts justify their conclusion that DHS had successfully rebutted the presumption by sowing a change in personal circumstances relevant only to Mr. Dong, the petitioner. All right. Thank you. Thank you. Your Honor, I only have a few things to say. First of all, this was discussed. The IJ initially put the burden on the respondent, on the petitioner first, and the BIA never corrected the IJ by wrongfully placing the burden on the petitioner to prove he has no problem if he goes back to China. So, secondly, the counsel mentioned after the first case we never updated the records. The reason being the BIA, the IJ denied the case three times. The first time the BIA remanded the case for the IJ to consider whether by issuing a passport is sufficient to show a change in fundamental personal circumstances. The BIA never required to supplement the records. They only asked the IJ to reconsider. The last decision by the BIA also asked the IJ to reconsider whether there is a fundamental change in country condition in China. And also, they asked the IJ to address the relocation issue. So, based on this record, I will ask this court to address the two issues, whether there is a change in country condition in China, whether the petitioner still has a well-founded future prosecution. I believe he has. Secondly, the relocation, whether the relocation based on this record will be available, because the only piece of evidence by the government is the 2012, the human rights practice in China in 2012. When the BIA asked the IJ to address the issue, the IJ said clearly, without any new records, said the government has reported the presumption, but did not cite any other evidence, merely based on his speculation on the passport issue. The whole issue rests with the passport. Do you think the government may not make anything of the issuance of a passport in a hypothetical case? If somebody gets a passport from a consular office or from an embassy, do you think as a matter of law that means nothing about that person standing with his home country? Yes, that's my view. You think it means nothing? Yes. Because I believe that any consulate overseas, their main function is to issue a passport for those citizens, no matter what. Unless that person is a wanted person, criminal, they will refuse to issue a passport, or high-profile descendants on the blacklist, they will not. Otherwise, for generous citizens, they are obliged to issue a passport for them to leave the country. I don't think that issuing a passport means anything for the future. If he returns to China, what's going to happen to him? He can still be subject to detention right the moment he enters the country, or if they are willing to. Or when he goes back to China, someday the local police will still find him. So I think your answer to my question is you believe it's just as likely. Do you think that issuing the passport is just a mistake, and they shouldn't have done it, but it doesn't mean anything to issue a passport? It means nothing? Your Honor, it could be a mistake, could be a colloquial error. No, but I asked you, I asked you, do we have to find, do you think it's true that it means nothing? Or in other words, can the government decide it means something? Can the government decide it means something? Or they have to decide it means nothing? So for the purpose here, I would say nothing. But as to how the government issued the passport, we don't know. We don't know whether the government issued it on the computer. If this guy has some problem, when he goes back to China, because they're going to check his passport, he's going to subject to anything by the local authority. So the passport means just give him a pass, or ID card used in the U.S. It doesn't mean anything for the purpose of the future fear. I don't think that means anything. Thank you for your time. Thank you. Thank you. We'll come down and greet counsel and go directly to our next case.
judges: Stephanie D. Thacker, Pamela A. Harris, Dennis W. Shedd